

1  Michele Gray
   P.O. Box 112
2  Troy, New York 12181
   165A Vandenburgh Place
3  Troy, New York 12180
   518-233-4282
4  Reneegray661@gmail.com

5

6          IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8  Michele Gray                    CASE NO:  **CV21-01334-PHX-DGC**

9         Plaintiff(s),            **COMPLAINT**

10    -vs-

11        Defendant(s),

12 GC Service, Apple

13

14

15                   **COMPLAINT**
      The plaintiff, *Michele Gray* brings complaint against *GC Service* with the

16 EEOC right to sue letter for constructive termination, termination, harassment,

17 breach of contract, pursuant to ADEA, ADAAA, ADA and Social Security Act as

18 follows:

19

20

21                   **JURISDICTION**

22     1) Plaintiffs, for all times mentioned herein, is a resident of *Rensselaer*

23 *County, State of New York*.

24     2) Venue is proper pursuant to *28 U.S.C. § 1391(c)* because the

25 defendant is a corporation with its principal place of business *in Phoeniz,*

26 *Arizona* and carries on business in varies other states, the defendant does in a

27 civil case typically is where the defendant resides, or do business.

28                              1

3) This state will generally have Subject Matter Jurisdiction over all types of cases or claims brought by a plaintiff above a dollar limit of $75,000.

4) Personal jurisdiction is proper pursuant *28 U.S.C. § 1391* though the acts of defendant caused harm to plaintiff in *New York, and Nevada, the defendant does* business in this state.

5) The Court has jurisdiction of this action under Title II of the ADA, ADEA, ADAAA, SSA, 42 U.S.C. §§ 12131-12132, and 28 U.S.C. §§ 1331 and 1345. The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201 and 2202.

**FACTS**

{1}

The plaintiff became employed on *June 26, 2019* by the defendant "*GC Service an outsourcing company*" *as a* "*Customer Service Rep; Home-Based* "for the electronic company "*Apple*" *residing in Las Vegas Nevada.*

{2}

The plaintiff outlined in a "*letter of resignation*" *sent by email* {**exhibit 1 and 3**} due to being *annoyed; isolated, left out; constant performance improvement plan (QnA); unfair discipline; intolerable unreasonable communication; constant sabotaging breach of contract;* harassment and unfair treatment on *January 25, 2020* to be affected on *February 3, 2020* {plaintiff 's employee #: 0241468}

{3}

On January 28, 2020 the plaintiff's manager "*Amber Hillert*" *(a* previous customer service rep, and home base manager) terminated the plaintiff, making the plaintiff's resignation "*effective immediately*".

{4}

The defendant states the reason for the immediate termination was due to the plaintiff's *"IP address"* showing up in New York, see "w2" proof of employment, {**exhibit 2**}.

{5}

The plaintiff's new cable services dated *October 08, 2020* in *New York* with *"Spectrum Cable Service"* see attached {**exhibit 4**}. The plaintiff's airline boarding pass on *"Frontier "airline see* attached {**exhibit 5**}. The plaintiffs National Grid Bill {**exhibit 6**}, The plaintiff's lease information for New York {**exhibit 7**} showing resident.

**GC SERVICE**

{6}

As stated on their website "GC Services" is the largest privately-held outsourcing provider of call center management in North America. Today, the employees provide a variety of call center services and is one of the nation's largest business processes outsourcing providers with nearly *8,500* employees in over 30 call center locations.

Being the established company *"GC Service"* isn't without *"negative reviews"*, see attached {**exhibit 8**}.

**PARTIES:**

{7}

Plaintiff, *Michele Gray is 55 years old,* resident of *Rensselaer County in Troy, New* York, became employed over the phone by GC Services management of HR on June 26, 2019 for a home-based customer service rep for Apple, a resident of Las Vegas, Nevada at the time of hire. The employee had to have internet

service and a computer was supplied by the employer GC Service/Apple. The plaintiff was trained for several weeks and became full time thereafter and all communication aspect of the job with management was by video, email, and Slack. The plaintiff was insulted, older than the other reps, overlooked, isolated and left out, comments on retirement, layoff, constant performance improvement plan, unfairly disciplined, throughout the employment, and wrongfully terminated.

---

**PLAINTIFF DUTIES:**

{8}

Receive calls and assist in placing order, exchanges, replacement, assist in lost product, undelivered product and damage product, change credit cards information, check for credit returned, refunds, and for those unsatisfied customers or those having a bad day offer discount, coupons, and goodwill, as well as tech support.

{9}

Assist in purchasing gift cards, offer returned credit for gift cards, change gift cards from Apple gift to iTunes gift card, and combining gift cards.

{10}

If you receive a *callback* from a customer within three days "*Homework*" *called (FRC)*" is given to correct mistake, "what could you have done to prevent a *callback*".

{11}

*Continuous "Training"* is mandatory and a huge part of the job.

4

{12}

When the *new iPhone 11* came out the employees had to learn about the *new features* and listen to the "Keynote speech".

[13]

New product information, such as "*Apple Card*" and how it's work.

[14]

Assist in the *Upgrade Program (UIP)* {once a year customer can upgrade to newer model},

[15]

Assisting in the financing of the "*Apple iPhone*".

{16}

Assist in "*Trade-in Program*" {trade in older device for newer device},

{17}

*Assist in promotion* and discounts as well as during the holiday season by correcting and offering and updates purchase.

{18}

Assist military, employee, *student discount*, on Apple product

{19}

*To learn product for third party seller for 'Apple"* and sometime a *test* follow.

{20}

All calls are listened my management and Apple reps.

{21}

Internet and phones service paid by the employee

{22}

RONA calls (*when calls are dropped when other incoming calls overlap with other incoming calls when call waiting and voice message was activated*) are

employees' responsibility, if RONA calls are detected, layoff until corrected as well as termination.

{23}

Bind by signed contract and its mandatory to attend Training, Coaching, and Team Meeting.

{24}

10 Occurrences' is termination, and 1 verbal, 2 written warning is termination

{25}

No employee is perfect and all employer must participate in all *"mandatory aspect"* of the job. If you don't allow the employees to participate in *mandatory aspect* of the job, as *Amber Hillert* has done it is a *"breach of contract"* and *termination* followed.

**FACTS II**

{26}

The plaintiff annoyed by manager *"Amber Hillert"* and *"Amber Hillert's manager, Andrea* to address issues with the defendant at every turn.

{27}

The plaintiff knew *termination* was forthcoming so the plaintiff sent several emails in attempt to prevent *termination* due to lack of communication by the employer.

{28}

The plaintiff wasn't given the same opportunity as other agents, all young and under the age of 30.

{29}

The plaintiff's manager would not allow the plaintiff to enter into "mandatory aspect" of the job since the beginning of the plaintiff employment such as "Team Meeting, Coaching and Training" which was "mandatory" under the contract.

{30}

The plaintiff signed a 'binding employment contracts' during the training process that outline "mandatory duties'" which was required to be upheld.

{31}

"Team Meeting" was once a week "Coaching" and "Training" was at any given time and the plaintiff wasn't allowed, being overlooked out and left out.

{32}

The plaintiff received 7 occurrences for 3 minutes – 5 minutes late from break

{33}

The plaintiff received 2 written warning for transferring a customer who had a received phishing calls to Fraud Department and for RONA calls.

{34}

The plaintiff was called to Coaching for the 1st time after 4 months after the written warning was given and no second chances or removed when disputed.

{35}

The plaintiff received no verbal warning.

{36}

The plaintiff moved to New York to change cable company to avoid RONA calls

{37}

Amber was constantly checking my line for RONA causing the RONA.

{38}

Amber told the plaintiff that she was home base customer service reps and became home base manager, before that she had issues with RONA and

7

overcame it, she received written warning but was given more chances than the plaintiff.

{39}

The plaintiff tried to complain the RONA calls not due voice messages and call waiting since it was deactivated while in training.

{40}

The trainer told the plaintiff the RONA is something else.

{41}

The plaintiff made tech support request to check the line, as well as the employer apps used by plaintiff such Slack, Hello, Toolkit, Toolbox and Apple Site but Amber removed all plaintiff's tech support request.

{42}

The failed attempt when reaching out to the managers, plaintiff was annoyed and told no email response, so the plaintiff couldn't confirm the reliability.

{43}

Amber Hillert plaintiff manger only wanted to speak to the plaintiff by phone which is questionable since email responses can be checked with HR or other managers on its accuracy.

{44}

At no time did the plaintiff receive a reply by email for any issue the plaintiff desire to address with the managers.

{45}

The plaintiff hoping to dispute the two "written warnings" and was told by phone and/or video "written warning, but was told it wouldn't be changed.

{46}

After training the Amber plaintiff's manager first one on one meeting with plaintiff was insulted when she said "How did you get this job?"

{47}

Amber had two different reps at two different time work one/on/one with the plaintiff to avoid introduction to the Team in the Meeting.

{48}

It wasn't until 4 months later did plaintiff was allowed in Team Meeting.

{49}

The plaintiff was never formally introduced to the other reps in Team Meeting as the other was introduce by name and their interest, and with the other reps.

{50}

All of the reps were under the age of 30.

{51}

The other mangers and plaintiff manager decreasing the plaintiff's QnA score from 90% to 60% due to the call sheet and listening to plaintiffs calls more than the other reps.

{52}

The managers, all under the age of 35 was constantly listening to plaintiff calls and constantly had to meet with manager for QnA performance more than the other reps.

{53}

The plaintiff was using the call sheet given in training but the manager changed the call sheet and the QnA score went back up to 90%.

{54}

Amber had assisted that I incorrectly transfer a call but I couldn't confirm since receiving 100 calls a day, but Amber insist that the plaintiff's QnA will decrease once again to 70%.

{55}

The plaintiff had no more warning and every day the plaintiff wondering and stressing that this will be the day of termination.

{56}

The plaintiff made a call to Apple to replacement an Apple iPad purchase through employment discount and the customer service reps wasn't using a call sheet and didn't suggest other products and repeating the plaintiff's name, telling how an email being sent about the replacement with tracking number or says" This is Apple my name is Michele, how can I help you" or say "Did I assist with your problem today, or is there anything else (customer name) I help you with; asked of the plaintiff in a QnA.

{57}

The plaintiff received many calls from customer stating that they were hung up on and can the plaintiff help and of course the plaintiff remained professional throughout her employment.

{58}

The plaintiff received many great reviews from customers, but wasn't recognized by management.

{59}

*PRs* are all information at the "*Customer Rep*" disposable to use to assist the customer. *PR's* has over 2000 amount of information on every question asked by customers and then Slack (**Exhibit 10)** (immediate communication to managers and reps to assist customer immediately (tool for group collaboration), and the plaintiff was denied access to, the plaintiff was told to look up PRs before connecting to Slack.

{60}

The plaintiff received occurrences for bath room breaks, which was only 10 minutes in an 8-hour work day.          10

{61}

The plaintiff has the best ACW out of all the employees *(less time between calls: less than 2 seconds)* ever with the defendant, with no recognition.

{62}

The managers realize motivated the reps with contest, such as, if you mention the *"customer name"* throughout the call or use words like *"spectacular"* to cumulate point toward an *"Amazon Gift Cards"*, yet the plaintiff was being questioned or more like interrogate about a call transferred incorrectly. The contest ran over 3 months over the holiday *"Halloween, Thanksgiving, Christmas and New Year's.*

{63}

With the *"mandatory overtime"* a *"binding contract agreement"* the plaintiff would response to the family by saying *"Hello, this is Apple, how may I help you?".*

**EEOC PROCEEDINGS**

{64}

The plaintiff completed an EEOC Intake online by 10/06/2020.

{65}

Questionnaire **(Exhibit 12)**

{66}

Interviewed

{67}

Defendant violated the Age Discrimination in Employment Act of 1967 **(Exhibit 13)**

{68}

Charge signed sent to defendant 11/05/2020

{69}

No response from the defendant

{70}

The right to suit letter sent to the online **(Exhibit 11)** on 12/05/2020

{71}

The plaintiff previous file this complaint in USDNY 1;20-cv-00714 filed June 26, 2020 waiting for judge decision to amend.

{72}

The plaintiff previous file this complaint in New York State Supreme Court (EF-2021-267935) on 01/17/2021

{73}

The plaintiff served the defendant on 01/27/2021 at GC Services' CT Corp authorized agent in Phoeniz, Arizona **(Exhibit 14)**.

{74}

The defendant contacted the plaintiff by email on 02/09/2021, to offer a stipulation settlement on 02/10/ 2021 for $7,500 and again on 02/25/2021 for $10,000 by phone

{75}

The plaintiff files a default judgment on 02/27/2021 along with a settlement offer for $850,000

{76}

The defendant answered complaint on 03/01/2021

{77}

The case was pending Rensselaer County Attorney approval on the plaintiff's court fee waiver since 02/16/2021.

{78}

The defendant wrote a letter to the judge to dismiss the default judgement on 03/04/2021 **(Exhibit 15)**

12

{79}

The plaintiff notified court and defendant of transfer of venue to this case on 03/22/2021 (**Exhibit 16**)

## CLAIMS

## Emotional Distress/Mental Anguish

Adversely affected the plaintiff's mental health, such as being *homelessness, {a traumatic injury}*. Injury generally refers to a *harm suffered*, which may be physical or *emotional pain* and suffering, damage to reputation or dignity, loss of a legal right, *breach of contract,* or damage to real or personal property, the civil law seeks to compensate victims of wrongful acts, whether they are intentional or unintentional, such as issuing the threat of future harm, such as unemployment and termination and the struggle of finding another job with a termination.

1. Access to mandatory aspect of the job denied.
2. "*Amber Hillert*" made the plaintiff resignation effective immediately proves that termination was forthcoming,
3. The plaintiff so stressed out and the believed every day was the day of termination.
4. Age discrimination
5. Insulting plaintiff on how job came about and how the plaintiff became employed.
6. Harassing plaintiff with QnA performance plan
7. Leaving the plaintiff out of meeting and from the other reps
8. Being overlooked on job done well
9. Annoying the plaintiff emails

13

10. Being left to out of Coaching and Training

11. Being encouraged to force to resign

12. Laying off the plaintiff for RONA calls when the RONA was caused by managers.

13. Faced unfair discipline

14. The plaintiff suffers Trauma a psychological distress following any terrible or life-threatening event. Sufferers may develop emotional disturbances such as extreme anxiety, anger, sadness, survivor's guilt, or PTSD, see Brown v. Bronx Cross County Medical Group, 834 F. Supp. 105 (S.D.N.Y. 1993)

15. The plaintiff become ill, worried about getting evicted and unable to find another job in time, caused depression,

16. The plaintiff is under care of Psychologist Dr. Martin Fine, Ph; Troy, New York

17. The plaintiff suffer anxiety, sleeplessness, mental anguish; reputational harm, strained relationship with family.

**Federal Tort Claim**

This *federal act* under the *federal law* that prohibits workplace harassment *pursuant to A.R.S. § 12-1810.* and discrimination, in areas that may give rise to violations include *recruiting,* hiring, promoting, transferring, *training,* disciplining, *discharging, assigning work,* measuring performance, or providing benefits which covers all private employers, that employ 15 or more individuals pursuant to *A.R.S. § 23-1502(F).* A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person pursuant to *AZ Rev Stat § 13-2921*

1. The defendant has more than 15 employees

2. The defendant denied training to perform the job

3. The defendant discharges the plaintiff and was being watched and listening to incoming calls

4. The defendant constantly measured the plaintiff performance with QnA more than the other 500 employees and

5. The plaintiff was age discriminated.

**Hostile Work Environment** *pursuant to A.R.S. § 23-1502(F) ADA* hostile environment claim is subject to all the requirements of a prima facie showing under a Title VII hostile environment claim.  (1) The plaintiff is disable and 55 years old women a member of a protected group; (2) The plaintiff has been subject to harassment by the defendant during work hours constant he has been subject to harassment, isolating the plaintiff, constant performance plan, and leaving the plaintiff out of team meeting based upon the protected status; (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; being disabled and (5) the plaintiff hold the employer liable since there aren't rules allowing abusive working environment.

1. Knowing the plaintiff had moved to *New York,* by tracking the *IP* address, the plaintiff was being watched more than the others reps, see *Viera v Olsten vs Kimberly Quality Care, 63 FSupp2d 413, 418 [SDNY 1999])*

2. Removing all the plaintiff tech support request to do the job effectively.

3. The plaintiff was annoyed by all of management

4. Sabotaging is a deliberate act to obstruct or destroy include intent.

5. Unreasonable occurrences and written warning

6. The written warning was unwelcoming and conduct of the management unfair

7. Denied no interaction with the other reps in Team Meeting on the job,

8. The manager was intimidating, when the plaintiff request to dispute occurrences and written warning was denied.

9. Constructive Dismissal, leaving the plaintiff no alternative but to resign *see case, Pa. State Police v. Suders, 542 U.S. 129 (2004)*

10.    Resignation truly was involuntary but was imminent.

11.    No recognition for job well done

12.    The defendant was liable for harassment by a supervisor and/or manager that results in a negative employment action such as *"termination", loss* of wages


**Harassment**" is a form of *"employment discrimination"* that violates *"Title VII* of the *Civil Rights Act of 1964" pursuant A.R.S. § 41-1463* and *pursuant to A.R.S. § 23-1502(F), Harassment* becomes unlawful, intimidating, petty slights, annoyances, isolated incidents and offensive conduct such as, put-down, see case, *Vance v. Ball State University, 520 U.S. ___ (2013),*

1. The plaintiff was harassment was ignoring

2. The plaintiff constant harassed with performance plan QnA

3. The plaintiff was suggested retirement

4. The plaintiff's manager wanted to know how the plaintiff was employed with defendant

5. The plaintiff was constantly told to work harder with the customer use the call sheet

6. The plaintiff was constantly harassing about the FRC homework

**Tortious Interference**

Common law tort allowing a claim for damages against a defendant who wrongfully interferes with the plaintiff's *"contractual"* or business relationships. A *tort* is an act that infringes upon the rights of others and is all about intent, as to allow the harmed party to file a *"civil lawsuit"*. A defendant is liable to pay damages in tort for actions intended to interfere with the plaintiff's *contractual relations* with a third party (Apple).

1. Amber prohibited the plaintiff to in mandatory contractual aspect of the job
2. Amber prohibited the plaintiff to group Team Meeting
3. Amber prohibited the plaintiff to Coaching, and Training

**Intentional Interference with Contractual Relations**

see case *United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812, 551 N.E.2d 20 n. 6 (Mass. 1990).* Common law of *torts,* occurs when one person {Amber Hillert} an employer intentionally damages someone else's {plaintiff} contractual or business relationships with a third party being *"Apple/GC Services"* causing economic harm *(Apple who pays GC for exceptional customer service care)* as well as loss of job or termination causing the plaintiff economic harm.

1. The plaintiff has a contract with Apple to preform job duties Amber intentional remove all the tech support request to successfully perform the duties in the contract.
2. The defendant acted intentionally and improperly, and when the defendant intentionally dismissed participations in *"mandatory aspect"* of the job *"coaching, team meeting and training"*.

3. *Amber Hillert"* unfairly disrupts *GC* and *Apple* business relationships by not allowing the plaintiff, the employee to participate in *"mandatory aspect"* of job requirements under the *contract* such as, *"coaching, team meeting and training"* that cause a *"breach of contract"*, include upholding employment with '*GC Services"* under the signed contract.

4. *Amber and other managers sabotage the plaintiff work performance*

5. *Sabotage by inducing* a contract breaking *a contract {breach of contract}*, or

6. Defendant obstruct someone's (the plaintiff) ability to dishonor a *contract* with a client (Apple)

7. The defendant deliberately refused *necessary aspect of job {mandatory aspect}* components

8. *The defendant annoying necessary aspect of job {mandatory aspect}* components. 10. The defendant failed to deliver particular mandatory aspect of the employment responsibility see *Affinitec Corp. v. Siemens Business Communication Systems, Inc. CaLApp. 4 Dist.,2002.*


**Social Security Act (SSA)** pursuant 42 U.S.C. §§ 301-1305 (Suppl. 4 1934). Grants to States for Old-Age Assistance for the Aged. Federal Old-Age, Survivors, and Disability Insurance Benefits.

1. The plaintiff been on Social Security Disability since 1995

2. The plaintiff been disabled for over 25 years

3. The plaintiff been suffered from anxieties and depression feeling isolated, and unaccepted by the society

4. The plaintiff returned to work after 25 and became employed by the defendant

5. The plaintiff disability has worsened since being terminated and working for the defendant

**Age Discrimination Laws (ADEA)** *pursuant to A.R.S. § 41-1463* prohibits age discrimination against people who are 40 years of older and applies to at least a company with 20 employees. Aged-based harassment is illegal when it is frequent or severe enough to create a hostile work environment or if it leads to the employee being fired or demoted. The "*ADEA's*" protections apply to both employees and job applicants, see case *Braden v. Lockheed Martin Corporation, No. 1:2014cv04215 - Document 95 (D.N.J. 2017).*

1. EEOC right to Sue Letter (Charge no. 540-2021-0075) (**Exhibit 11, 12 ,13**) E*qual Employment Opportunity Commission, 42 U.S.C. 2000e et seq. ("Title VII"), Pub. L. 88–352, title VII, § 701, July 2, 1964, 78 Stat. 253;*

2. The plaintiff filing a complaint with *EEOC* for disability claim and the defendant refused to response

3. There was a pattern of hiring only younger employees

4. The average was 35

5. The plaintiff being *54* years, more than *5-30* years older than most of the employees and managers,

6. The plaintiff was told there was no promotion

7. Comments on retirement

8. The defendant insults the age

9. The plaintiff was annoyed in disputes

10. The plaintiff was isolated from the other reps in Team Meeting

11.     The plaintiff was left out of participation of Coach, and

Training mandatory aspect of the job

12.     The plaintiff was encouraged to retire

13.     The plaintiff was layoff to correct RONA caused by the Amber

the manager

14.     The constantly receiving performance improvement plan by

mangers for the from QnA more than other reps

15.     The plaintiff was facing unfair discipline 2 written warning,

no verbal warning and 7 Occurrences for 3- 6 minute late from

break

**Title VII Age Discrimination** Under Title VII", *ADEA; 29 U.S.C. § 621 to 29*

*U.S.C. § 634 and 29 U.S.C. § 631)* an employer may not discriminate with

regard to any term, condition, or privilege of employment, as a protected class

such as "age" sex, family status and disabled. The "Age Discrimination in

Employment Act of 1967" protects individuals who are 40 years of age or older

from employment discrimination based on age,

16.     The plaintiff a single mother

17.     The plaintiff sex is a woman

18.     The plaintiff's family status with a minor child

19.     The plaintiff being disabled

20.     The plaintiff was discriminatory harassed

21.     The plaintiff is 54 years old

22.     The plaintiff was 53 at the time of employment with the

defendant.

**Americans with Disabilities Act, 42 U.S.C. § 12101 A. Disability**

To state a claim for relief under Americans with Disabilities Act, 42 U.S.C. § 12101, the plaintiff must "show that he: (1) plaintiff is on Social Security Disability and has a disability; (2) plaintiff was otherwise qualified to perform the job; and receive high score in QnA until the defendant intentionally decreased the plaintiff score (3) plaintiff discrimination was as well as ADEA based on plaintiff's disability.

6. The plaintiff been on Social Security Disability since 1995

7. The plaintiff been disable for 25 years

8. The plaintiff been suffered from anxieties and depression feeling isolated, and unaccepted by the society

9. The plaintiff returned to work after 25 and became employed by the defendant

10.     The plaintiff disability has worsened

11. The plaintiff wasn't allowed to participate in team meeting, coaching, training, and Slack.

**The Nevada Fair Employment Practices Act** prohibits discrimination in employment on the basis of age against individuals 40 years of age or older (*NV Rev. Stat. Sec. 613.310 et seq.*). The law applies to employers with 15 or more employees pursuant to *AZ Rev. Stat. Sec. 41-1461,*

1. The Plaintiff reside at the start of employment June 26, 2019 until October 03, 2019.

**The New York Human Rights Law** prohibits age discrimination in employment practices against individuals 18 years of age or older. The law covers employers with four or more employees (*NY Exec. Law Sec. 296 et seq.*).

1. The plaintiff resides in the state at the end of employment January 28, 2020.

**Under the Arizona Civil Rights Act**, it is an unlawful employment practice for an employer to discriminate against an individual who is 40 years of age or older. The Act covers all employers with 15 or more employees (*AZ Rev. Stat. Sec. 41-1461 et seq.*).

1. The defendant place of business in the state at the start and end of plaintiff employment.

## 29 U.S. Code § 623.Prohibition of age discrimination (Count 1)

(a)EMPLOYER PRACTICES It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

1. The plaintiff was insulted
2. The plaintiff 54 was much older than the other reps and managers
3. The plaintiff overlooked, isolated and segregated from other reps
4. The plaintiff was left out of Team Meeting; Coaching and Training,
5. Manager comments on plaintiff retiring,
6. Layoff for Rona calls caused by Amber calling the plaintiff's line while receiving calls, over 300 RONA calls (dropped calls)
7. The plaintiff received constant performance improvement plan, (QnA)

8. The plaintiff was unfairly disciplined, throughout the employment,

(occurrences and written warning but no verbal warning)

9. The plaintiff wrongfully terminated

10.       The plaintiff was overwhelmed emotional distress, terminate was

imminent constructive termination followed and immediate terminate by

Amber manager

11.       Sabotaging Contract with Apple by disallowing the plaintiff to

Coaching; Training and Team Meeting which mandatory aspect of the

job.

## ADA- Disability Discrimination, Failure to Accommodate (Count 2)

1. Plaintiff incorporates by reference all above paragraphs of Complaint as

though fully set forth herein.

2. The actions of the Defendant, through its agents, servants and employees, in

discriminating against plaintiff on the basis of her actual and/or perceived

disabilities, (anxieties) and failing to provide reasonable accommodation for her

disability, constituted violations of the ADA.

3. As a direct result of the aforesaid unlawful discriminatory employment

practices engaged in by the Defendant in violation of the ADA, plaintiff

sustained permanent and irreparable harm, resulting in her termination from

employment, at the time of constructive termination which caused her to

sustain a loss of earnings, plus the value of certain benefits, plus loss of future

earning power, plus back pay, and front pay and interest due thereon.

4. As a further direct result of the aforesaid unlawful discriminatory

employment practices engaged in by the Defendant in violation of the ADA,

plaintiff suffered severe emotional distress, embarrassment, humiliation, and

loss of self- esteem to returned to work after 25 years.

## 29 U.S. Code § 621.Congressional statement of findings and purpose (Count 3)

(a)The Congress hereby finds and declares that (1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs;

(2) the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons; (3) the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave; (4) the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce. (b) It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment. (Pub. L. 90–202, § 2, Dec. 15, 1967, 81 Stat. 602.)

1. The Plaintiff realleges and incorporates by reference the foregoing paragraphs.

2. The plaintiff The ADEA makes it unlawful for employers and their agents "to fail or refuse employee any individual because of such individual's age," 29 U.S.C. § 623(a)(1).

3. The plaintiff was 53 years old at the time employed with GC Services as Home-based Customer Service rep.

4. The plaintiff was significantly older than hired and employed employees and managers.

5. The plaintiff was disadvantaged and wrongly terminated when the plaintiff attempts to resign.

6. The plaintiff was insulted with age related comments

7. The plaintiff experienced more unfair discipline with 7 occurrences for 3-6 minutes lastness from break

8. The disadvantage with more than other performance improvement plan intentionally weeding the plaintiff out.

9. The plaintiff feeling stress, undesirable and believing being fired was imminent

10. The plaintiff was isolated and segregated from mandatory aspect of job such Coaching and Training, and Team meeting violating the contract with Apple

11. The defendant discriminated against the plaintiff because of stereotypes and unfounded assumptions regarding older workers'

12. The Defendant's violations of the ADEA were intentional and willful.

13. As a direct and proximate result of the foregoing violations of the ADEA, the plaintiff has sustained economic and non-economic damages, including, but not limited to denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within GC Services.

*Under the Tort law, Title 28 U.S. Code § 2671  and Article 18 Section 6 Arizona Const.*